UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


DURWIN L. ABBOTT (#316843)

VERSUS                                          CIVIL ACTION

HERMAN C. SOONG, ET AL                          NUMBER 13-584-SDD-SCR


### NOTICE

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, June 3, 2014.

*Stephen C. Riedlinger*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DURWIN L. ABBOTT (#316843)

VERSUS                                              CIVIL ACTION

HERMAN C. SOONG, ET AL                              NUMBER 13-584-SDD-SCR

**MAGISTRATE JUDGE'S REPORT**

Before the court is the Motion for Partial Summary Judgment by defendants James Devall and Steve Rader. Record document number 14. The motion is opposed.[1]

Pro se plaintiff, while an inmate confined at Hunt Correctional Center ("HCC"), St. Gabriel, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dixon Correctional Institute ("DCI") Warden Steve Rader, Dr. Herman C. Soong and James Devall. Plaintiff alleged that while confined at DCI he was administered antipsychotic medication without his consent in retaliation for filing administrative grievances and lawsuits. Plaintiff asserted that this violated his constitutional rights.

Defendants Warden Rader and Devall moved for summary judgment relying on a statement of undisputed facts, copies of excerpts from the plaintiff's master prison record, copies of the plaintiff's medical and mental health records and the results of Administrative

---

[1] Record document number 22.

Remedy Procedure ("ARP") DCI-2013-150.[2]

## I. Factual Allegations

Plaintiff alleged that he suffers from anxiety and takes Paxil® for his condition. Plaintiff alleged that on December 3, 2012, he had a medical call-out to see Dr. Soong, his treating psychiatrist, and social worker Devall. Plaintiff alleged that during his appointment, he asked Dr. Soong to transfer him to Hunt Correctional Center because unidentified DCI corrections officers were constantly retaliating against him.

Plaintiff alleged that after he asked to be transferred Dr. Soong's attitude changed and he informed the plaintiff that he was modifying the plaintiff's medication. Plaintiff alleged that Dr. Soong prescribed Benadryl® and Risperdal®. Plaintiff alleged that he told Dr. Soong that he did not need medication but Dr. Soong insisted that he take the medication. Plaintiff alleged that he did not say anything else to Dr. Soong because he did not want to be placed on suicide watch or under mental health observation for refusing to take his medication.

Plaintiff alleged that during another medical call-out, Dr. Soong explained to him that he could not be forced to take medication, but Dr. Soong could have the plaintiff transferred to

---

[2] Dr. Soong was not served with a summons and the complaint and did not participate in the defendants' motion for summary judgment.

HCC where he could be forced to undergo treatment if Dr. Soong determined that the plaintiff needed such treatment. Plaintiff alleged that he continued to take his medication out of fear that he would be placed on suicide watch or under mental health observation and because "they" (presumably the defendants) had access to his legal work.

Plaintiff alleged that he filed a complaint with the Louisiana Board of Medical Examiners against Dr. Soong complaining that he was being forced to take antipsychotic medication without his consent. Plaintiff alleged that on February 18, 2013, he requested a hearing. Plaintiff alleged that a week later, Dr. Soong discontinued the Benadryl® but told the plaintiff he would not discontinue the Risperdal®. Plaintiff alleged that Dr. Soong told him that even though the Risperdal® was not discontinued, the plaintiff did not have to take the medication. Plaintiff alleged that he then stopped taking Risperdal®.

Plaintiff alleged that on March 18, 2013 he was transferred to HCC where Dr. Gamble ordered blood work and a CT scan. Plaintiff alleged that the test results indicated that he did not have a chemical imbalance of the brain.

Plaintiff alleged that Dr. Soong and Devall administered the antipsychotic medication in retaliation for him filing ARPs and lawsuits. Plaintiff alleged that Warden Rader refused to have him transferred to another prison facility or take appropriate action

to stop the retaliation by Dr. Soong and Devall. Plaintiff alleged that Warden Rader has a reputation for retaliating against inmates who file ARPs, and that during the relevant period between December 2012 and March 2013 he had five pending lawsuits against the prison.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

### B. Failure to Exhaust Administrative Remedies

Defendants argued that the plaintiff failed to exhaust available administrative remedies before filing suit regarding all claims against them except the claim that he was administered antipsychotic medication without his consent in retaliation for

4

filing ARPs.

Section 1997e of Title 42 of the United States Code provides in pertinent part as follows:

> (a) Applicability of Administrative Remedies.--No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust available administrative remedies before filing a § 1983 suit and is precluded from filing suit while the administrative complaint is pending. *Clifford v. Gibbs*, 298 F.3d 328, 332 (5th Cir. 2002); Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), abrogated in part by *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007) (abrogating the holding that a district court may dismiss a civil complaint *sua sponte* for failure to exhaust); *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir. 1998); *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). A prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. *Johnson v. Johnson*, 385 F.3d 503, 514 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90, 126 S.Ct. 2378, 2386 (2006). Because § 1997e(a) expressly requires exhaustion, prisoners may not deliberately bypass the

administrative process by flouting an agency's procedural rules. Id., 126 S.Ct. at 2389-90. The § 1997e(a) exhaustion requirement is mandatory, irrespective of the forms of relief sought and offered through administrative avenues. *Days v. Johnson*, 332 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act ("PLRA") does not specify who must be named in a prison grievance in order to properly exhaust the prison grievance system. *Jones v. Bock*, 549 U.S. 199, 217-218, 127 S.Ct. 910, 922-23 (2007). Instead, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 923.

The primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). A grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id*.

Plaintiff alleged that he filed ARP DCI-2013-150 regarding the claims raised in the complaint.[3] The summary judgment evidence showed that the plaintiff filed ARP LSP-2013-150 on January 25, 2013, complaining that Warden Rader made Dr. Soong and Devall

---

[3] Record document number 1, p. 4, § II. C. 1.

6

administer antipsychotic drugs without his consent.[4]  Plaintiff complained that if he refused to take the medication he would be placed under mental health observation or on suicide watch.[5] Plaintiff complained that Dr. Soong prescribed the medication to retaliate against him.[6]

The summary judgment evidence showed that the plaintiff failed to exhaust available administrative remedies regarding any claim against defendants Warden Rader and Devall except his claim that he was administered antipsychotic medication without his consent in retaliation for filing ARPs.

As noted above, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.  However, a grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit.

To the extent the complaint can be read to allege claims other than the administration of antipsychotic medication prescribed by Dr. Soong in retaliation for filing ARPs against Warden Rader and Devall, the summary judgment evidence showed that the plaintiff's ARP failed to provide prison administrators with a fair opportunity

---

[4] *Id.* at 5-6.

[5] *Id.*

[6] *Id.*

7

to address those claims against these defendants.

**C. Qualified Immunity**

Defendants argued that they are entitled to qualified immunity because their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct

8

examined by reference to clearly established law. *Id*., at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would have known that his conduct was illegal. Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

**D. Retaliation**

Plaintiff alleged that Dr. Soong prescribed antipsychotic medication which he was given even though he had not executed a written consent. Plaintiff alleged that he took the medication to avoid being placed under mental health observation or on suicide watch. Plaintiff alleged that during two subsequent medical call-outs, Dr. Soong advised him that he did not have to take the medication. Plaintiff alleged that after being told a second time that he did not have to take the antipsychotic medication, he in fact stopped taking it, apparently without any adverse consequences.

As stated above, the plaintiff alleged that he was prescribed

9

the antipsychotic medication in retaliation for filing ARPs and lawsuits. Plaintiff also alleged that at the time he was prescribed the antipsychotic medication he had five lawsuits pending against the prison, and that Warden Rader has a reputation for retaliating against prisoners who file ARPs and lawsuits.

Prison officials may not retaliate against a prisoner for exercising his First Amendment right of access to the courts, or for complaining through proper channels about a guard's misconduct. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). However, claims of retaliation from prison inmates are regarded with skepticism, lest federal courts embroil themselves in every adverse act that occurs in penal institutions. *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, a prisoner must establish four elements (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999).

If an inmate is unable to point to a specific constitutional right that has been violated, then the claim will fail as a matter of law. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the violation of a

constitutional right); *Woods*, 60 F.3d at 1166 (observing that, "[t]o state a claim, the inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than his personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299,310 (5th Cir. 1997). To demonstrate the requisite retaliatory intent on the defendants' part, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166. Regarding the element of causation, a successful claim of retaliation requires a showing that "but for" some retaliatory motive, the complained of adverse action would not have occurred. *Johnson*, 110 F.3d at 310; *Woods*, 60 F.3d at 1166. In addition, the complained-of adverse action must be more than *de minimis* to support a claim of retaliation in the prison context. *Morris*, 449 F.3d at 684-85; *Hart*, 343 F.3d at 764.

The purpose of allowing inmates to assert retaliation claims under 42 U.S.C. § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *Morris*, 449 F.3d at 686 (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584 (1998)). Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Morris*, 449 F.3d at 686. *De minimis* acts that would not deter an

ordinary person from further exercise of his rights do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id*. Thus, an inmate's job transfer from the commissary to the kitchen was *de minimis*, while his transfer to a more dangerous prison was not. *Id*. at 687; *see also Bibbs v. Early*, 541 F.3d 267, 271-72 (5th Cir. 2008) (subjecting inmate to below-freezing temperatures for more than four hours during each of four consecutive nights was more than *de minimis*).

First, the plaintiff failed to demonstrate the violation of a federal constitutional provision or statute by either Warden Rader or Devall. Plaintiff did not allege any actions by either defendant which, if true, would constitute a violation of the plaintiff's federal rights. There is no evidence in the record that either Warden Rader or Devall prescribed, or was responsible for Dr. Soong prescribing, the antipsychotic medication.[7]

Second, the plaintiff failed to produce direct evidence of motivation, nor did he allege a chronology of events from which retaliation may plausibly be inferred. Plaintiff did not allege, nor is there any evidence in the record, that either Warden Rader or Devall knew the plaintiff had lawsuits pending against the prison when Dr. Soong prescribed the medication. In fact, in the complaint the plaintiff denied that he had filed other lawsuits

---

[7] Record document number 19.

relating to his imprisonment.[8]

Notwithstanding this allegation, the plaintiff attached to his complaint exhibits from three other law suits filed by him, or by an attorney on his behalf, against Warden Rader or the Louisiana Department of Public Safety and Corrections. Exhibit E is a Order granting the plaintiff's motion to proceed in forma pauperis in *Abbott v. Babin*, CV 12-631-JJB-SCR.[9] The record in that case shows that Warden Rader was a defendant, but he was not served with the complaint until on or after January 22, 2013.[10]

Exhibit F is an October 1, 2012 notice of a Remand Order issued September 28, 2012, in state court suit No. 608,237 pending in the Nineteenth Judicial District Court, East Baton Rouge Parish, Louisiana.[11] The document does not mention Warden Rader or indicate the either he or the prison are named as defendants.

Exhibit G is the Order to Serve Defendants issued in *Abbott v. Tarver*, CV 13-94-SDD-SCR on March 12, 2013.[12] The record in that case shows that Warden Rader was served through Rhonda Weldon on

---

[8] Record document number 1, p. 2, § I.A.

[9] Record document number 1-3, p. 9, Exhibit E.

[10] CV 12-631, record document number 9 (showing that the Summons in a Civil Action was received by the East Feliciana Sheriff's Office on January 22, 2013).

[11] Record document number 1-3, p. 10, Exhibit F. The suit caption is "DURWIN ABBOTT VS LA DEPT PUBLIC SAFETY & CORR."

[12] Record document number 1-3, P. 11, Exhibit G.

April 12, 2013.[13]

Furthermore, the plaintiff's ARP, dated December 3, 2012, was placed on backlog. Warden Rader and Devall did not address it until May 2013,[14] some five months after Dr. Soong prescribed the antipsychotic medication.

These documents do not support a chronology of events from which retaliation by Warden Rader may plausibly be inferred because they do not show that Warden Rader knew about these law suits at the time Dr. Soong prescribed the antipsychotic medication.

### **RECOMMENDATION**

It is the recommendation of the magistrate judge that the Motion for Partial Summary Judgment filed by defendants Warden Steve Rader and James Devall be granted, and this action be referred back to the magistrate judge for further proceedings on the plaintiff's claims against defendant Dr. Herman C. Soong.

Baton Rouge, Louisiana, June 3, 2014.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[13] CV 13-94, record document number 14.

[14] Record document number 1-3, pp. 1-5, Exhibits A-1 through A-3, and Exhibit B.